JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Bowman & Back, Inc.

**(b)** County of Residence of First Listed Plaintiff  Etowah County, AL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Fenningham, Dempster & Coval LLP
Christopher P. Coval, Esq., ID 93688

## DEFENDANTS

SLM Waste & Recycling Services, Inc. d/b/a SLM-Facility Solutions Nationwide

County of Residence of First Listed Defendant  Montgomery County, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | | ☐ 485 Telephone Consumer Protection Act |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | **IMMIGRATION** | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28:1332 Diversity-Breach of Contract

Brief description of cause:
Breach of Contract and Declaratory Relief

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
9/15/2021

SIGNATURE OF ATTORNEY OF RECORD
*Chris Coval*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Bowman & Back, Inc., PO Box 978 Gadsen, AL 35902 _____

Address of Defendant: _____ SLM Waste & Recycling, Inc., 5000 Commerce Dr., Green Lane, PA 18054 _____

Place of Accident, Incident or Transaction: _____ 5000 Commerce Drive, Green Lane, PA 18054 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☐

I certify that, to my knowledge, the within case ☐ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____   _____   _____
　　　　　　　　　　　　　　*Must sign here*
　　　　　　　　　　　　*Attorney-at-Law / Pro Se Plaintiff*　　　　　*Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
　　　*(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

☑ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
　　　*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Christopher P. Coval _____, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _____ 9/15/21 _____   _____ Chris Coval _____   _____ 93688 _____
　　　　　　　　　　　　　　　*Sign here if applicable*
　　　　　　　　　　*Attorney-at-Law / Pro Se Plaintiff*　　　　　*Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Bowman & Back, Inc. | : | CIVIL ACTION |
| v. | : | |
| SLM Waste & Recycling Services, Inc. d/b/a | : | |
| SLM-Facility Solutions Nationwide | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)   In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( X )

| | | |
|---|---|---|
| 9/15/21 | Christopher P. Coval, Esq. | Plaintiff, Bowman & Back, Inc. |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-4070 | 215-639-8995 | ccoval@fsdc-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania  ▾

| | |
|---|---|
| BOWMAN & BACK, INC. <br><br><br> *Plaintiff(s)* <br> v. <br> SLM WASTE & RECYCLING SERVICES, INC. d/b/a <br> SLM-FACILITY SOLUTIONS NATIONWIDE <br><br><br> *Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  SLM WASTE & RECYCLING SERVICES, INC. d/b/a
SLM-FACILITY SOLUTIONS NATIONWIDE
5000 COMMERCE DRIVE
GREEN LANE, PA 18054

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    FENNINGHAM, DEMPSTER & COVAL LLP
CHRISTOPHER P. COVAL, ESQ., ID 93688
FIVE NESHAMINY INTERPLEX, SUITE 315
TREVOSE, PA 19053
215-639-4070

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:    09/15/2021                                   _____
                                                      *Signature of Clerk or Deputy Clerk*

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

BOWMAN & BACK, INC.,           :
P.O. BOX 978, GADSEN, AL 35902,  :
                               :
            Plaintiff,     :
                               :
          v.             :
                               : CIVIL NO. _____
SLM WASTE & RECYCLING      :
SERVICES, INC. d/b/a SLM - FACILITY  :
SOLUTIONS NATIONWIDE,     :
5000 COMMERCE DRIVE,      :
GREEN LANE, PA 18054,      :
                               :
            Defendant.    :
                               :

## COMPLAINT

Plaintiff Bowman & Back, Inc. ("B&B") brings this action against defendant SLM Waste

& Recycling Services, Inc, d/b/a SLM – Facility Solutions Nationwide ("SLM") (B&B and SLM

are collectively referred to herein as the "Parties" and individually as a "Party"). In support of

this Complaint against SLM, B&B avers as follows:

## INTRODUCTION AND NATURE OF THE ACTION

1.     In this action, B&B seeks damages for breach of contract and unjust enrichment,

and seeks declaratory relief under 28 U.S.C. § 2201 *et seq.* declaring that:

(a)     an August 1, 2014 Agreement between the Parties (the "2014

Agreement") is in full force and effect and will remain so unless and until the Agreement is

properly terminated under Section 11 of the Agreement or until it expires following a bona fide

sale of SLM and the distribution to B&B of its 1/2 pro-rata share thereof or until B&B purchases

SLM pursuant to Section 10(m) of Appendix A to the 2014 Agreement;

1

(b)    pursuant to Section 10.0 of Appendix A to the 2014 Agreement, subject to an annual reconciliation, B&B is entitled to be paid 50 percent of the gross profits for services rendered to those of SLM's customers that were generated by B&B without SLM subtracting its base rates therefrom for any transaction;

(c)    SLM has underpaid B&B for services rendered to those of SLM's customers that were generated by B&B in an amount to be determined at trial;

(d)    the 2014 Agreement can be terminated by either Party but only for the limited bases set forth in Section 11.2 therein;

(e)    SLM's attempt to terminate the 2014 Agreement on October 31, 2019 did not terminate the 2014 Agreement and that, as such, the 2014 Agreement remains in full force and effect;

(f)    if SLM did properly terminate the 2014 Agreement, B&B is nonetheless entitled: (i) to receive 1/2 of its pro-rata share of the proceeds from the bona fide sale of SLM and under no circumstances can that right be unilaterally terminated and; ii) subject to an annual reconciliation, to be paid 50 percent of the gross profits for services rendered to those of SLM's customers, following said termination of the 2014 Agreement, that were generated by B&B without SLM subtracting its base rates therefrom for any transaction;

(g)    if SLM did not properly terminate the 2014 Agreement, B&B is nonetheless entitled: (i) to receive 1/2 of its pro-rata share of the proceeds from  the bona fide sale of SLM and under no circumstances can that right be unilaterally terminated and; ii) subject to an annual reconciliation, to be paid 50 percent of the gross profits for services rendered to those of SLM's customers, following SLM's attempt at termination of the 2014 Agreement, that

were generated by B&B without SLM subtracting its base rates therefrom for any transaction; and

(h)   an accounting from SLM to calculate the amount that B&B is owed by SLM for B&B's 50 percent interest in the gross profits from services provided since August 1, 2014 to SLM customers that were generated by B&B.

## I.   The Parties

2.   B&B is an Alabama corporation with its principal place of business located in Gadsden, Alabama.

3.   SLM is a Pennsylvania corporation with its principal place of business located at 5000 Commerce Drive, Green Lane, Pennsylvania 18054.

## II.   Jurisdiction and Venue

4.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the Parties and the amount in controversy exceeds $200,000, exclusive of interest and costs.

5.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (c) because SLM resides in this judicial district and because a substantial part of the events giving rise to these claims occurred in this judicial district.

## III.   General Allegations

6.   SLM is a waste management company that retains third parties to provide services such as waste removal, grease trap pumping, and recycling assistance for commercial customers nationwide.

7.   B&B is a national sales and marketing company with over nine years of experience in selling waste management services and solutions. Prior to creating B&B, its

founding principals had over 20 years of national sales and marketing experience in business services and solutions.

      **A.**    <u>**The November 20, 2012 Memorandum of Understanding**</u>

      8.      On or about November 20, 2012, SLM and B&B entered into a Memorandum of Understanding ("MOU"). A true and correct copy of the MOU is attached hereto as Exhibit A.

      9.      Under the MOU, B&B agreed to market SLM's waste-management services throughout the United States and Canada in exchange for, subject to an annual reconciliation, 50 percent of the gross profits for services provided to any SLM customer generated by B&B. [Exhibit A, MOU at p. 2].

      10.      Gross profits are calculated by subtracting the amount that a third-party vendor charged SLM to service a location from the amount charged to SLM's customer for such work.

      11.      Pursuant to the MOU, the Parties agreed that on an annual basis, the Parties will determine whether 50% of the gross profits cumulatively exceeded the base rates set forth in Section II(B) and (C) on pages 2 and 3 of the MOU.

      12.      Should the cumulative total of the base rates in all categories of services for all transactions be less than 50 percent of the annual gross profits, then the Parties would reconcile the difference between those two amounts.

      13.      At no time during the existence of the MOU were the annual cumulative totals of base rates in all categories of services less than 50 percent of the annual gross profits.

      14.      The Parties mutually understood that they intended to work together to grow SLM's business with the express intention to sell SLM in approximately five years with B&B to receive, upon the sale of SLM, "1/2 of [B&B's] pro-rata share [of SLM], based on [B&B's] book of business at the time of the sale...." [Exhibit A, MOU at p. 1, ¶ 3, and p. 3, ¶ V].

15.     Consistent with their goals to build and, eventually, to sell SLM and share in the proceeds of such sale, the Parties agreed that the MOU would be in full force and effect perpetually unless and until: i) either party breached the MOU and failed to cure within 30 days; or ii) SLM was sold. [Exhibit A, MOU at p. 2].

16.     Thus, the primary consideration that B&B received under the MOU was: i) 50 percent of the gross profits from all services provided to SLM customers that were generated by B&B; and ii) 1/2 of B&B's pro-rata share from the sale of SLM.

**B. The August 1, 2014 Agreement**

17.     On or about July 31, 2014, SLM and B&B entered into an Independent Contractor Agreement that, effective August 1, 2014, replaced the MOU (the "2014 Agreement"). A true and correct copy of the 2014 Agreement is attached hereto as Exhibit B.

18.     Susan Daywitt, SLM's president, expressly intended that the bulk of the primary terms and conditions of the MOU would remain unchanged in the 2014 Agreement with the exception of B&B being on SLM's contact management system.

19.     SLM drafted the 2014 Agreement and made some changes as requested by B&B.

20.     The 2014 Agreement is 10-pages in length and includes an Appendix A on pages 7 through 10. Appendix A of the 2014 Agreement is referred to herein as "Appendix A."

21.     The Parties incorporated Appendix A into the 2014 Agreement via Section 4.0. [Exhibit B, 2014 Agreement at Section 4.0].

22.     The Parties initialed all 10 pages of the 2014 Agreement including Appendix A.

23.     Under the 2014 Agreement, the Parties retained most of the essential terms of the MOU.

5

24.     Under the 2014 Agreement, B&B once again agreed to market SLM's waste-management services throughout the United States and Canada in exchange for 50 percent of the gross profits for services provided to any SLM customer generated by B&B. [Exhibit B, Appendix A at p. 9, ¶ 10.0].

25.     Under the 2014 Agreement, gross profits were again calculated by subtracting the amount that a third-party vendor charged SLM to service a location from the amount charged to SLM's customer for such work.

26.     Under the 2014 Agreement, the Parties once again agreed that on an annual basis, the Parties will determine whether 50% of the gross profits cumulatively exceeded the base rates for all transactions set forth in Appendix A, Section 10(c)(3) ("Base Rates").

27.     And once again, under the 2014 Agreement, should the cumulative total of the Base Rates for all transactions in all categories of services be less than 50 percent of the annual gross profits, then the Parties would reconcile the difference between those two amounts.

28.     At no time under the 2014 Agreement were the annual cumulative totals of the Base Rates in all categories of services less than 50 percent of the annual gross profits.

29.     Under the 2014 Agreement, the Parties agreed that SLM will pay B&B "on the fourth Friday of each calendar month for the previous month's activity, as long as customer has paid for contracted services." [Exhibit B, Appendix A at p. 8, Section 5.6].

30.     Under the 2014 Agreement, the Parties again agreed that, upon a bona fide sale of SLM, B&B would receive "1/2 of [B&B's] pro-rata share [of SLM], based on [B&B's] book of business at the time of the sale...." [Exhibit B, Appendix A at p. 9, ¶ 9.0 (the "Pro-Rata Share Provision")].

31.     The Parties expressly agreed that the 2014 Agreement "shall remain in full force and effect indefinitely, or until terminated pursuant to this section of the Agreement [Section 11]." [Exhibit B, 2014 Agreement at p. 4, ¶ 11.1].

32.     Per Section 11.2 of 2014 Agreement, the Parties agreed that 2014 Agreement could be terminated by either Party but only if:

   i)     "the other party committed an act of fraud, misappropriation or personal dishonesty intended to result in the substantial personal enrichment of the other at the expense of such terminating party";

   ii)    "the other party is convicted of or enters a plea of nolo contendre to any felony or any misdemeanor involving moral turpitude";

   iii)   "the other party breaches or is in default of any obligation hereunder, when the default is incapable of cure or when, being capable of cure, has not been cured within thirty (30) days after receipt of written notice of such breach or default (or such additional cure period as the non-defaulting party may approve); or

   iv)    "the other party becomes insolvent, makes a general assignment for the benefit of creditors, files a voluntary petition of bankruptcy, suffers or permits the appointment of the receiver for its business or assets, or becomes subject to any proceeding under any bankruptcy or insolvency law, whether domestic or foreign, dissolved or liquidated, voluntarily or otherwise."

[Exhibit B, 2014 Agreement at p. 4, Section 11.2].

33.     Thus, the Parties expressly agreed that the 2014 Agreement would exist in perpetuity unless and until: i) either Party terminated it pursuant to one of the limited bases for termination set forth in Section 11.2; ii) until the 2014 Agreement expired following a bona fide sale of SLM and a distribution to B&B of B&B's 1/2 pro-rata share of the proceeds from such sale; or iii) until the 2014 Agreement expired following a sale of SLM to B&B.

34.     The 2014 Agreement does not contain a provision that enables either Party to terminate it on any ground not specified in Section 11.2, including but not limited to the 2014 Agreement no longer being economically viable to either Party.

35.     The Parties further agreed that "Independent Contractor," and Sections 1 through 15 of the 2014 Agreement "shall survive any expiration or termination of this Agreement." [Exhibit B, 2014 Agreement at p. 4, Section 11.7].

36.     As Section 4.0 of the 2014 Agreement expressly incorporated Appendix A into the overall agreement, Appendix A, including but not limited to the Pro-Rata Share Provision (Appendix A, Section 9.0), survives any termination of the 2014 Agreement.

37.     SLM's obligations: i) to pay B&B its 50-percent interest in the gross profits from services provided to SLM's customers generated by B&B; ii) to pay B&B its 1/2 pro-rata share following a bona fide sale of SLM; and iii) to provide four months prior notice of an intention to sell SLM and B&B's right of first of first refusal to purchase SLM, all survive any termination of the 2014 Agreement by SLM.

38.     Like the MOU, the primary consideration that B&B receives under the 2014 Agreement is: i) subject to an annual reconciliation, 50 percent of the gross profits from all services provided to SLM customers that were generated by B&B; ii) 1/2 of B&B's pro-rata share of SLM, based on B&B's book of business at the time of the sale; and iii) B&B's right of first refusal to purchase SLM.

39.     Since the August 1, 2014 effective date of the 2014 Agreement, B&B has generated more than 30 new customers for SLM.

40.     In total, since 2012, B&B has generated more than 475 customer locations of SLM's approximately 15,000 customer locations.

41.     Upon information and belief, revenue generated by SLM under the 2014 Agreement represented approximately five percent (5%) of SLM's gross revenue.

### C.   SLM has breached the 2014 Agreement in at least four ways

#### 1.   Payments by SLM of less than 50 percent of the gross profits

42.   SLM has breached the 2014 Agreement by paying B&B less than its 50 percent interest in the gross profits for services provided to customers of SLM that B&B had generated through its sales and marketing efforts.

43.   The total amount of damages suffered by B&B for this category of breach is in excess of $50,000.

#### 2.   The failure of SLM to pay commissions to B&B for all services provided to SLM's customers

44.   In approximately December of 2018, B&B discovered that SLM breached the 2014 Agreement by not paying B&B its 50-percent interest in the gross profits for all services that SLM provided to one of SLM's customers that B&B had generated.

45.   B&B brought this underpayment to SLM's attention, and after providing copies of SLM's invoices for that customer, SLM admitted that it had underpaid B&B.

46.   B&B expects that in discovery it will find evidence of other underpayments that fall into this category of breach.

#### 3.   Wrongful termination of the 2014 Agreement

47.   Via correspondence, on October 31, 2019, SLM purported to terminate the 2014 Agreement. A true and correct copy of an October 2019 Letter from Susan V. Daywitt, the president of SLM, to Kent Back, an owner of B&B, is attached hereto as Exhibit C (the "Termination Letter").

48.   Via the Termination Letter, SLM purported to terminate the 2014 Agreement, effective immediately, because SLM could allegedly "no longer survive" under it, citing a "changing environment with plummeting margins" and the need "to hire top-notch and high-

skilled labor along with having to upgrade our fundamental technology" in "order to stay competitive". [Exhibit C, Termination Letter].

49.     In its Termination Letter, SLM did not cite, as a ground for termination: i) any alleged breach or default of any obligation of the 2014 Agreement by B&B; ii) any alleged fraud, misappropriation, or personal dishonesty by B&B; iii) any alleged conviction of a crime or entry of a plea of nolo contendre by B&B or any of its employees; or iv) any form of bankruptcy or insolvency of B&B.

50.     Indeed, in its Termination Letter, SLM confirmed that the relationship between SLM & B&B "has been a strong one," that B&B "had done right by us," and that B&B made a "major contribution" to SLM. [Exhibit C, Termination Letter].

51.     Prior to sending its Termination Letter, SLM did not send B&B a notice of breach or default under the 2014 Agreement and did not, therefore, provide B&B with the opportunity to cure any alleged breach or default of the 2014 Agreement.

52.     The cited basis for the alleged termination of the 2014 Agreement—the alleged increased costs for SLM to remain competitive—is not among the limited grounds for which SLM had the authority to terminate the 2014 Agreement. [Exhibit C, 2014 Agreement at p. 4, Section 11.2].

53.     After purporting to terminate the 2014 Agreement on October 31, 2019, both Susan Daywitt, the president of SLM, and Jason Kibler, the Vice President of Sales for SLM, admitted during conversations with Kent Back, an owner of B&B, that SLM terminated the 2014 Agreement because it allegedly could no longer afford to pay commissions to B&B at the agreed upon 50-percent rate.

**4.    SLM's failed to pay commissions to B&B for services provided to SLM's customers from November 1, 2019 to the present.**

54.    Since purportedly terminating the 2014 Agreement on October 31, 2019, SLM has failed to pay any and all amounts due to B&B under the 2014 Agreement for services provided by SLM after November 1, 2019 to customers generated by B&B, except for payments totaling $26,161.93 in January-March, 2020.

55.    As of the date of this Complaint, B&B estimates that SLM has failed to pay amounts due to B&B in excess of $200,000.

56.    The failure of SLM to pay B&B its 50-percent share of the gross profits for work performed since November 1, 2019 has knowingly caused B&B and its employees and principals to suffer serious financial hardship; hardships that have and will continue to worsen with each missed payment.

## COUNT I
### Breach of Contract

57.    B&B incorporates the allegations contained in paragraphs 1 through 56 of this Complaint as if fully set forth herein.

58.    B&B and SLM entered into a fully-executed, written contract, the 2014 Agreement.

59.    SLM has breached the 2014 Agreement by:

(a)    Paying B&B less than 50 percent of the gross profits for services provided to SLM's customers that were generated by B&B;

(b)    Upon information and belief, failing to pay B&B its 50-percent interest of the gross profits from all services provided to SLM's customers that were generated by B&B;

(c)     Wrongfully purporting to terminate the 2014 Agreement; and

(d)     Failing to pay to B&B its 50-percent interest in the gross profits from services provided since November 1, 2019 to SLM's customers that were generated by B&B.

60.     To date, B&B has suffered actual damages in excess of $200,000 incurred as a result of SLM's breaches of the 2014 Agreement.

61.     SLM has also breached the 2014 Agreement by its breaches of the duty of good faith and fair dealing owed to B&B by all of the above-referenced conduct.

WHEREFORE, B&B requests that the Court enter judgment against SLM for breach of contract and award B&B actual damages in excess of $200,000, reasonable costs, pre- and post-judgment interest, and such other relief as the Court deems just and proper.

### COUNT II
**Unjust Enrichment (in the alternative)**

62.     B&B incorporates the allegations contained in paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63.     Should it be determined that the 2014 Agreement is no longer in full force and effect, as an alternative theory of recovery, B&B is entitled to damages against SLM for unjust enrichment.

64.     B&B has conferred benefits upon SLM in the form of a customer base from which SLM has and will continue to receive and appreciate financial remuneration.

65.     The acceptance and retention of such benefits by SLM under the circumstances described in this Complaint make it inequitable for SLM to retain such benefits without the payment of value to B&B.

12

WHEREFORE, B&B requests that the Court enter judgment against SLM for unjust enrichment award B&B damages in excess of $200,000 and reasonable costs, require SLM to pay B&B 1/2 of its pro-rata share following a bona fide sale of SLM, and such other relief as the Court deems just and proper.

## COUNT III
### Declaratory Judgment

66. B&B incorporates the allegations contained in paragraphs 1 through 65 of this Complaint as if fully set forth herein.

67. The nature of this Count is a proceeding for a declaratory judgment under Section 2201 of the Judicial Code (28 U.S.C.A. § 2201) for the purpose of determining questions in actual controversy between the parties, namely, the question of the validity of a written contract and the rights and obligations of the Parties to that written contract.

68. B&B and SLM are parties to the 2014 Agreement.

69. A dispute has arisen between the Parties with respect to: i) the term of the 2014 Agreement; ii) the percentage of B&B's interest in the gross profits it is entitled to receive of the payments for services rendered to SLM's customers that were generated by B&B; iii) whether SLM has failed to pay B&B all that it is due and owing under the 2014 Agreement; iv) the bases under which the Parties are entitled to terminate the 2014 Agreement; v) whether SLM properly terminated the 2014 Agreement; vi) if SLM properly terminated the 2014 Agreement, what provisions of the 2014 Agreement have survived termination; and vii) what provisions of the Agreement survive any termination of the 2014 Agreement.

70. The 2014 Agreement has a perpetual term unless and until: i) it is terminated by either Party under the express limited grounds for termination set forth in Section 11.2 of the 2014 Agreement and as described in Paragraph 32 herein [Exhibit B, 2014 Agreement at p. 4, ¶

13

11.2] or ii) it expires following a sale of SLM: 1) to a third-party and the payment to B&B of 1/2 of B&B's pro-rate share of the proceeds from such sale; 2) to B&B.

71.     Pursuant to Section 10.0 of Appendix A to the 2014 Agreement and subject to an annual reconciliation, B&B is entitled to be paid 50 percent of the gross profits for services rendered to those of SLM's customers that were generated by B&B.

72.     As set forth above, SLM has underpaid B&B for services rendered to those of SLM's customers that were generated by B&B.

73.     The 2014 Agreement can only be terminated pursuant to one of the bases set forth in Section 11.2 of the 2014 Agreement.

74.     SLM's attempt to terminate the 2014 Agreement on October 31, 2019 did not terminate the 2014 Agreement and that, as such, the 2014 Agreement remains in full force and effect.

75.     Even if SLM did properly terminate the 2014 Agreement, pursuant to Section 11.7 of the 2014 Agreement, Section 1 through 15 and Appendix A survived termination and that, as such, B&B is entitled to receive 1/2 of its pro-rata share of SLM upon the sale of SLM and, subject to an annual reconciliation, B&B is entitled to be paid 50 percent of the gross profits for services rendered to those of SLM's customers that were generated by B&B.

76.     If, SLM improperly terminated the 2014 Agreement, then B&B is, subject to an annual reconciliation, entitled to payment of 50 percent of the gross profits from all services provided since November 1, 2019 to SLM customers that were generated by B&B.

77.     B&B is entitled to an accounting from SLM to calculate the amount that B&B is owed by SLM for B&B's 50-percent interest in the gross profits from services provided since August 1, 2014 to SLM customers that were generated by B&B.

78. SLM can only sell SLM via a bona sale at fair market value, as opposed to sham sale of SLM at substantially less than fair-market value.

WHEREFORE, B&B requests a declaratory judgment as follows:

a. The 2014 Agreement has a perpetual term unless and until: 1) the 2014 Agreement expires upon the bona fide sale of SLM to a third-party at fair market value and a distribution to B&B of its 1/2 pro-rata interest in the proceeds from such sale; 2) a sale of SLM to B&B; or 3) the 2014 Agreement is terminated by either Party under the express limited grounds for termination set forth in Section 11.2 of the 2014 Agreement; namely, that either Party may terminate the 2014 Agreement but only if:

i) "the other party committed an act of fraud, misappropriation or personal dishonesty intended to result in the substantial personal enrichment of the other at the expense of such terminating party";

ii) "the other party is convicted of or enters a plea of nolo contendre to any felony or any misdemeanor involving moral turpitude";

iii) "the other party breaches or is in default of any obligation hereunder, when the default is incapable of cure or when, being capable of cure, has not been cured within thirty (30) days after receipt of written notice of such breach or default (or such additional cure period as the non-defaulting party may approve); or

iv) "the other party becomes insolvent, makes a general assignment for the benefit of creditors, fifes a voluntary petition of bankruptcy, suffers or permits the appointment of the receiver for its business or assets, or becomes subject to any proceeding under any bankruptcy or insolvency law, whether domestic or foreign, dissolved or liquidated, voluntarily or otherwise."

b. Pursuant to Section 10.0 of Appendix A to the 2014 Agreement, B&B is entitled to be paid 50 percent of the gross profits for services rendered to those of SLM's customers that were generated by B&B from August 1, 2014 to the present, including but not limited to payments for services rendered since November 1, 2019 to SLM's customers that were generated by B&B.

     c.     SLM has paid B&B less than 50 percent of the gross profits for all services rendered to those of SLM's customers that were generated by B&B in an amount to be determined at trial.

     d.     SLM's attempt to terminate the 2014 Agreement on October 31, 2019 did not terminate the 2014 Agreement and that, as such, the 2014 Agreement remains in full force and effect.

     e.     Pursuant to Section 10(m) of Appendix A to the 2014 Agreement, SLM is required to provide four months of SLM's plans to sell SLM and, during such period, B&B has the right to purchase SLM.

     f.     SLM may only be sold via a bona fide sale at fair market value, should B&B not exercise its right to purchase SLM following four months prior notice to B&B of SLM's intention to sell SLM.

     g.     If SLM did or did not properly terminate the 2014 Agreement, B&B is nonetheless entitled to receive 1/2 of its pro-rata share of SLM upon the bona fide sale of SLM at fair market value and under no circumstances can that right be terminated and, subject to an annual reconciliation, B&B is entitled to be paid 50 percent of the gross profits for services rendered to those of SLM's customers that were generated by B&B from August 1, 2014 to the present, including but not limited to payments for services rendered since November 1, 2019 to SLM's customers that were generated by B&B.

     h.     B&B is entitled to an accounting from SLM to calculate the amount that it is owed by SLM for B&B's 50 percent interest in the gross profits from services provided since August 1, 2014 to SLM customers that were generated by B&B.

16

## JURY DEMAND

Plaintiffs hereby demand a jury trial of twelve jurors.

Respectfully submitted,

FENNINGHAM, DEMPSTER
& COVAL LLP

Dated: September 14, 2021

BY:_____
Christopher P. Coval, Esquire
Atty ID No. 93368
5 Neshaminy Interplex,
Suite 315
Trevose, PA 19053
215-639-4070
ccoval@fsdc-law.com

Attorneys for Plaintiff
Bowman & Back, Inc.

17